******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LAUREN BERGER *v.* BRYAN FINKEL
(AC 36551)

DiPentima, C. J., and Keller and Mullins, Js.

*Argued September 18—officially released November 17, 2015*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Calmar, J. [dissolution judgment]; Adelman, J. [motion for modification].)

*George J. Markley*, with whom was *Christopher C. Burdett*, for the appellant (defendant).

*Gary I. Cohen*, with whom was *Nicole DiGiose*, for the appellee (plaintiff).

*Opinion*

MULLINS, J. The defendant, Bryan Finkel, appeals from the judgment of the trial court denying his motion for a modification of alimony and child support. On appeal, the defendant claims that the court incorrectly determined that the dissolution court had used his earning capacity to fashion its support orders, and, on the basis of this error, the court then improperly determined that he failed to prove a substantial change in circumstances. We reverse the judgment of the trial court.

The following facts and relevant procedural history inform our review. The marriage of the defendant and the plaintiff, Lauren Berger, was dissolved on February 2, 2012. In a corrected April 18, 2012 memorandum of decision, the dissolution court, *Calmar, J.*, ordered the defendant to pay to the plaintiff periodic alimony in the amount of $500 per week and child support for the parties' two minor children in the amount of $342 per week. On December 31, 2012, the defendant filed a motion for modification of his support order on the ground that there had been a substantial change in circumstances since the court issued its earlier support orders.[1] Following a hearing on December 18, 2013, the court denied the defendant's motion for modification. The defendant filed a motion to reargue, which the court granted, and the matter was reheard on December 30, 2013, and January 23, 2014. The court issued a written memorandum of decision on January 24, 2014, again denying the defendant's motion for modification. This appeal followed. Additional facts will be set forth as necessary.

Initially, we set forth our standard of review. "The scope of our review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Nevertheless, we may reverse a trial court's ruling on a modification motion if the trial court applied the wrong standard of law. . . .

"[General Statutes §] 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When, as in this case, the disputed issue is alimony [or child support], the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change

has occurred. . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. . . .

"Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony and support are relevant to the question of modification. . . . The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an appeal. . . . Rather, the trial court's discretion includes only the power to adapt the order to some distinct and definite change in the circumstances or conditions of the parties. . . .

"Thus, [w]hen presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the [General Statutes] § 46b-82 criteria, make an order for modification. . . . The court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Olson* v. *Mohammadu*, 310 Conn. 665, 671–74, 81 A.3d 215 (2013).

We also note that "[i]t is well established that the trial court may under appropriate circumstances in a marital dissolution proceeding base financial awards [pursuant to §§ 46b-82 [a] and 46b-86] on the earning capacity of the parties rather than on actual earned income.[2] . . . Earning capacity, in this context, is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health. . . . When determining earning capacity, it . . . is especially appropriate for the court to consider whether [a person] has wilfully restricted his [or her] earning capacity to avoid support obligations." (Citations omitted; footnote added; footnote omitted; internal quotation marks omitted.) *Tanzman* v. *Meurer*, 309 Conn. 105, 113–14, 70 A.3d 13 (2013).

In this appeal, the defendant claims that the court incorrectly determined that the dissolution court had used the defendant's earning capacity, rather than his gross and net income, when fashioning its support

orders, and, on the basis of this error, the court then improperly determined that the defendant failed to prove a substantial change in circumstances, and also failed to make any findings as to the defendant's current earning capacity.

The following additional facts are necessary to our resolution of the defendant's claim. In its April 18, 2012 memorandum of decision, the dissolution court made the following relevant findings: "[T]he defendant enjoyed income of $328,120 in 2009,[3] as set forth in the defendant's 2009 federal income tax return, $158,962 in 2010, as set forth in the defendant's application for automatic extension of time to file his 2010 income tax return, and $95,550 in 2011, as stated by the defendant at trial on October 4, 2011. At the time of trial, he reported that he was not consulting but was receiving consultant fees for completed work in the amount of $273 per week. The court finds the defendant has a gross income of $116,000 and net weekly earnings of $1230. The court is optimistic that the defendant's earning capacity, like the plaintiff's, will improve. Based on this likelihood, the court will require each party to provide to the other documentation of income on a yearly basis while any of the court's financial orders remain in effect." (Footnote in original.) On the basis of these facts and others, the court ordered the defendant to pay periodic alimony to the plaintiff in the amount of $500 per week, and to pay support for the two minor children in the amount of $342 per week, which the court found to be in accordance with the child support guidelines.

In December, 2012, the defendant filed a motion for modification of the dissolution court's support orders. On the face of the motion, the defendant alleged that there had been a substantial change in circumstances, which, he wrote, were as follows: "Prior to [the dissolution] trial, the defendant was employed full-time in Florida. At the time of trial, the defendant was unemployed, but the court . . . found the defendant had an earning capacity of $116,000 annually. Since that time, the defendant has been unable to find full-time employment but has worked as much as possible as an independent contractor whenever he can find work. In the eleven months since Judge Calmar's orders were released, the defendant has earned $59,404 . . . which is substantially below Judge Calmar's imputed earning capacity of $116,000 annually . . . ."

Early in the December 11, 2013 hearing on the defendant's motion for modification, the defendant's attorney argued to the court that Judge Calmar "was mistaken about [the defendant's] earning capacity." He stated: "In fact, [the defendant] hasn't been able to earn what was projected that he might be able to earn . . . ." The court told the defendant's attorney that "Judge Calmar's decision is the law at this point, and so you need to

show me there's been . . . some substantial change. And . . . the initial effort will be to show me that [the defendant], despite his best efforts, has not been able to reach the income level . . . ." The defendant's attorney stated that he "certainly [did not] disagree at all . . . ."

During the hearing, the defendant testified that his gross business income was just over $79,000 in 2011.[4] He also testified that his gross income for 2012 was between $65,000 and $75,000, which, after his attorney showed him a document to refresh his memory, he corrected and stated that his gross income from employment in 2012 was $50,700. The court then asked counsel if this was from the defendant's schedule C, and it explained that "it makes a significant difference to me as to whether or not this is his gross proceeds or his gross income, net of claimed business expenses." The defendant then clarified, through examination, that his gross receipts were $65,000 to $75,000 and that, after deducting business expenses, his net profit was $50,700 for 2012.

Soon thereafter, the defendant's attorney argued that he had met his burden of proving a substantial change in circumstances: "Judge Calmar's decision reached the conclusion that [the defendant] had an earning capacity of $116,000 a year. In fact, in one year, he earned $79,000, and, in another year, he earned $50,000. That's substantially below the imputed income or the earning capacity income upon which Judge Calmar based his orders. I think that, in and of itself, is a change in circumstances that warrants the court in hearing all the evidence as to whether there should be a modification and what it should be." The plaintiff's attorney argued otherwise.

The court took a short recess to review in more detail Judge Calmar's decision. When court resumed, the defendant's attorney stated that he essentially "had to throw himself on his own sword" because, during the recess, he realized that he had been misreading Judge Calmar's decision. He stated: "I have, frankly, always read Judge Calmar's decision to say that [the defendant] had an earning capacity of $116,000 per year. But that's not what Judge Calmar says. And it's clear that it's not. In fact . . . Judge Calmar writes [that] the court finds the defendant has a gross income of [$116,000] and a net weekly of $1230. He doesn't use the word earning capacity in that sentence at all. . . . He finds that [the defendant] has earnings of $116,000 a year. There was no motion for an articulation as to that finding. Perhaps, there should have been. Hindsight is always twenty-twenty."

The plaintiff's attorney then pointed out that "Judge Calmar wrote, 'the court finds the defendant has a gross income of $116,000 [and] net weekly earnings of $1230. The court is optimistic that the defendant's earning

capacity, like the plaintiff's, will improve.' [Judge Calmar] obviously is referring to what he had just found with respect to the [defendant's] income when he . . . referred to earning capacity."

The court stated that it believed the plaintiff's counsel was correct. Nevertheless, the court then pointed out that "it's clear that [in] the [defendant's] preparation of [his] affidavit [he] made no attempt to estimate or calculate a true net [income]. In fact, [the affidavit] simply says taxes not yet paid. So, I'm really left only with a gross income, which, in and of itself, is below the earning capacity." The court then denied the defendant's motion, ruling from the bench.

On December 18, 2013, the defendant filed a motion to reargue, which the court granted. The court also vacated its denial of the defendant's motion for modification and continued the proceedings to January 23, 2014, for additional evidence. At this hearing the defendant testified. He also presented documentary evidence, specifically, his 2011 and 2012 federal tax returns, in order to show a substantial change in circumstances, namely, his reduced income. The court also had before it a document purportedly showing all of the companies and "head hunters" (employment recruiters) that the defendant had contacted in an effort to secure better employment.

On January 24, 2014, the court issued a memorandum of decision denying the defendant's motion for modification on the ground that he had not established a substantial change in circumstances. The court stated that it was persuaded that Judge Calmar had determined the defendant's earning capacity, rather than his gross income, and it proceeded to consider whether the defendant had established "a significant change in circumstances sufficient to warrant a hearing [for] a possible modification of the financial orders currently in place." The court discussed the law and the evidence that the defendant had presented, and it acknowledged that the defendant claimed that he had gross earnings of "just under $69,000 annually" and that he had vigorously been searching for better employment. The court found, however, that "[d]espite [the defendant's] testimony . . . the court is simply not convinced that there has been any significant change in his circumstances." Accordingly, the court denied the motion.

The defendant claims that the court incorrectly determined that Judge Calmar had used the defendant's earning capacity, rather than his gross and net income, when fashioning its support orders, and, on the basis of this error, the court made other errors. We agree that the court misinterpreted Judge Calmar's decision to have used the defendant's earning capacity rather than his net income when Judge Calmar fashioned the support orders. We further conclude that because the court used a legal standard not applicable to this case, the

judgment denying the motion for modification must be reversed and the matter remanded to the trial court for a new hearing on the defendant's motion.

"The construction of a judgment is a question of law for the court. . . . We review such questions of law de novo." (Citation omitted; internal quotation marks omitted.) *Robaczynski* v. *Robaczynski*, 153 Conn. App. 1, 4–5, 100 A.3d 408 (2014). "As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as that which is expressed." (Internal quotation marks omitted.) *de Repentigny* v. *de Repentigny*, 121 Conn. App. 451, 462–63, 995 A.2d 117 (2010).

The dissolution court specifically found, in its April 18, 2012 memorandum of decision, that the defendant had business income of $73,745 in 2009, $158,962 in 2010, and $95,550 as of October, 2011. It then found that the defendant's gross income for 2011 was $116,000, with net weekly earnings of $1230. Following these specific findings, the dissolution court then stated that it was "optimistic that the defendant's earning capacity, like the plaintiff's, will improve." The court also stated that the parties were required to exchange yearly income documentation each to the other for so long as the financial orders remained in effect. In reading these findings, the trial court determined that the dissolution court had found the defendant's earning capacity to be $116,000, and that it made no findings as to his purported income for 2011. We disagree and conclude that reading the judgment as a whole, the dissolution court determined that the defendant had a projected gross income of $116,000, with a projected net weekly income of $1230, for the calendar year 2011, and that it based its support orders on this projected income.

First, the dissolution court set forth the defendant's actual income for the previous years. Next, it set forth what the defendant said was his income through October, 2011. The court then specifically found the defendant's gross and net income for the entire year 2011, and it directed each party to give to the other documentation of their yearly income each and every year while the financial orders remained in effect. What especially is telling in this matter is what the dissolution court did not do. The court did not detail the necessary elements that are required of a court relying on earning capacity rather than actual or purported income to determine child support.

As we previously have stated: "[a] party's earning capacity is a deviation criterion under the guidelines,

and, therefore, a court must specifically invoke the criterion and specifically explain its justification for calculating a party's child support obligation by virtue of the criterion instead of by virtue of the procedures outlined in the guidelines." *Fox* v. *Fox*, 152 Conn. App. 611, 633, 99 A.3d 1206, cert. denied, 314 Conn. 945, 103 A.3d 977 (2014). The dissolution court in this case did not cite both the actual (or projected) 2011 earnings of the defendant and his earning capacity, it did not set forth a different presumptive support amount calculated with the defendant's actual net income and find that this amount was inequitable, and it did not specifically invoke the defendant's earning capacity as a deviation criterion in calculating the defendant's child support obligation. See footnote 2 of this opinion; see also *Barcelo* v. *Barcelo*, 158 Conn. App. 201, 215, 118 A.3d 657, cert. denied, 319 Conn. 910,      A.3d      (2015). Had the court used the defendant's earning capacity rather than his actual projected income, the court would have been required to justify the use of such a criterion in calculating child support.

Reading the dissolution court's written decision, however, it seems rather apparent that the reason the court did not set forth its justification for a deviation from the use of actual income is because it did not deviate. Rather, the court found and used the defendant's actual projected income in establishing its support orders. We also are persuaded that this reading of the court's decision is proper because, had the court used the defendant's earning capacity in making its orders, it would have made no sense for the court then to direct the parties to exchange financial records on an ongoing basis because the actual earnings of the defendant would not be relevant.[5]

Additionally, our construction of the decision of the dissolution court is supported by the actual figures set forth in that decision. The court stated that the defendant had testified on October 4, 2011, that he had earned $95,500 during 2011, but that for the eleven weeks prior to his testimony, he had earned only $273 per week. The court also set forth the defendant's earnings in 2009 as $73,745, and in 2010 as $158,962, as had been evidenced by the defendant's tax returns for those years. The court then found that the defendant "has a gross income [for 2011] of $116,000 . . . ." Although the plaintiff argues that the dissolution court rejected the defendant's testimony about his gross income for 2011, and, instead, found the defendant's earning capacity, the figures and the language used by the court support a conclusion that the court accepted the defendant's testimony that he had earned $95,500 through October 4, 2011, and then projected the defendant's income for the remainder of 2011, arriving at a figure of $116,000. Accordingly, we conclude that the dissolution court based its support orders on the actual projected earnings of the defendant and not on his

earning capacity.

The defendant next argues that because the trial court improperly construed the decision of the dissolution court, the judgment must be reversed because it is tainted by the court's use of a legal standard that was not applicable to the case. We agree.

In this case, the trial court incorrectly found that the dissolution court had used the defendant's earning capacity in fashioning its financial orders. Once the court made this determination, it then had the responsibility of determining whether the defendant had established a substantial change in his earning capacity. The defendant, however, had not put on evidence as to his earning capacity; rather, his evidence related to his orally revised claim that he had a substantial change in his actual earnings. Because the court viewed the defendant's evidence under an inapplicable legal standard, we conclude that the matter must be returned to the trial court for a new hearing.

The plaintiff argues that, even if the trial court employed the wrong standard, because the court found the defendant's testimony not credible, this case really comes down to a credibility determination. She further contends that the defendant failed to provide any credible evidence of a change in circumstances because he provided no credible financial information of *either* a substantial change in earning capacity or in actual earnings. We are not persuaded by this contention. Although we agree that the court found credibility problems with the defendant's testimony, the court also had before it some documentary evidence in the form of federal tax returns, on which the court made no credibility determination. We have no way of assessing whether, if reviewed under the proper standard, the court would have credited this evidence as being sufficient to establish a substantial change in the defendant's actual earnings. Accordingly, the case must be remanded for a new hearing.

The judgment is reversed and the case is remanded for a new hearing on the defendant's motion for modification.[6]

In this opinion the other judges concurred.

[1] The motion for modification also requested a modification of an August 20, 2012 order that concerned support arrearages owed by the defendant to the plaintiff. This issue, along with several other motions and an appeal from the judgment of dissolution were resolved by a stipulation of the parties on May 9, 2013, which resulted, inter alia, in a withdrawal of that appeal.

[2] "Section 46b-215a-3 (b) of the Regulations of Connecticut State Agencies lists the six criteria that may justify deviation from the presumptive support amounts as, (1) other financial resources available to a parent that are not included in the definition of net income, but could be used by such parent for the benefit of the child or for meeting the needs of the parent, (2) [e]xtraordinary expenses for care and maintenance of the child, (3) [e]xtraordinary parental expenses . . . that are not considered allowable deductions from gross income, but which are necessary for the parent to maintain a satisfactory parental relationship with the child, continue employment, or provide for the parent's own medical needs, (4) [n]eeds of a parent's other dependents . . . [where] a parent may be legally responsible for the support

of individuals other than the child whose support is being determined, (5) [c]oordination of total family support when considerations involving the division of assets, provision of alimony and tax planning will not result in a lesser economic benefit to the child, and (6) [s]pecial circumstances relating to reasons of equity, including shared physical custody, extraordinary disparity in parental income, the best interests of the child and [o]ther equitable factors." (Internal quotation marks omitted.) *Barcelo* v. *Barcelo*, 158 Conn. App. 201, 212 n.7, 118 A.3d 657, cert. denied, 319 Conn. 910, A.3d (2015).

[3] "Although the defendant's 2009 income tax return reflected total income of $328,120, only $73,745 of that was business income, and the remaining portion was the result of the defendant's liquidation of an [individual retirement account] and pension assets."

[4] In early October, 2011, however, the defendant had testified before the dissolution court that his gross income for 2011 was $95,550.

[5] Although we recognize that the memorandum of decision of the dissolution court also contained a sentence that stated that the court hoped that the "earning capacity" of the parties would increase in the future, the entirety of the court's decision leads us to conclude that the court meant that it hoped that the parties' actual earnings would increase. See generally *de Repentigny* v. *de Repentigny*, supra, 121 Conn. App. 462–63 (we read decision in entirety to ascertain meaning).

In its decision, the court explained that the plaintiff had received her undergraduate degree from the University of Vermont and her master's degree in business administration from Fordham University. At the time the parties married, the plaintiff was employed by Clairol as a marketing executive earning more than $100,000 per year. She left that position when she became pregnant with the parties' first child. The court also found that the plaintiff had started her own business, but that she reported no income at the time of the dissolution trial. The court stated that although it was "optimistic that the plaintiff's earnings [would] improve, there was insufficient data presented to the court to [permit it] to find an earning capacity." The court then discussed the defendant's professional credentials and his reported earnings. The court found that the defendant had "a gross income of $116,000 and net weekly earnings of $1230" before stating that it was "optimistic that the defendant's earning capacity, like the plaintiff's, [would] improve." It seems clear, reading the decision as a whole, that the court meant that it was optimistic that the parties' actual incomes would improve.

[6] We also note that the defendant should modify his written motion to reflect his oral amendment.